
DAN RAYFIELD
Attorney General
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistants Attorneys General
DEREK OLSON #225504
Assistants Attorney General
Trial Attorneys
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: 971-673-1880
Fax: 971-673-5000
Email:   Brian.S.Marshall@doj.oregon.gov
         Nina.Englander@doj.oregon.gov
         Derek.Olson@doj.oregon.gov

Attorneys for Plaintiff, State of Oregon

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| STATE OF OREGON,<br><br>       Plaintiff,<br><br>       v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security, U.S. DEPARTMENT OF HOMELAND SECURITY; UNITED STATES COAST GUARD; AND ADMIRAL KEVIN LUNDAY, in his official capacity as Acting Commandant of the U.S. Coast Guard,,<br><br>       Defendants. | Case No. 6:25-cv-02172<br><br>COMPLAINT |

Page 1 -   COMPLAINT
           BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## I.     INTRODUCTION

1.     "Oregon borders the Pacific Ocean, which is both beautiful and treacherous." H.J.M. 20, 2015 Leg. (Oregon) (urging Congress to fund and maintain the U.S. Coast Guard Air Facility in Newport, Oregon, in perpetuity).

2.     Commercial and recreational activities off the central Oregon coast can be perilous: Offshore fishing "is an implicitly dangerous activity," "vessels occasionally sink or capsize," and "millions of tourists visit the Oregon coast annually," where "a number of them find themselves in distress on beaches or ocean cliffs." *Id.* And because Oregon's cold, coastal waters can endanger an overboard mariner's life in fewer than 30 minutes, *id.*, timely rescue is the difference between life and death.

3.     For all those reasons, the U.S. Coast Guard rescue helicopter that had been stationed at the Coast Guard Air Facility in Newport for nearly four decades had been a literal lifeline to Oregon's central coast communities.

4.     Defendants have taken that lifeline. Without notice to the Newport community, Oregon's leaders, or Congress, Defendants relocated the rescue helicopter nearly 100 miles south to North Bend, a distance that can add nearly an hour travel time to any rescue off the Newport coast. That relocation comes at a serious cost. Unless the rescue helicopter is returned to Newport, "hundreds of thousands of lives could be at risk annually under [Oregon's] unique ocean conditions and current level of recreational, commercial fishing and mariner activities."[1]

5.     Defendants' relocation of the rescue helicopter is unlawful. That relocation constitutes a closure, cessation of operations, or significant reduction in the use of Newport's Coast Guard air facility in violation of 14 U.S.C. § 912. Also, Defendants have failed to provide a consistency determination that the relocation of the rescue helicopter is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal

---

[1] Letter from Oregon Ocean Policy Advisory Council (OPAC) Chair Scott McMullen and Vice-Chair David Allen to Oregon Governor Kate Brown (Apr. 27, 2017) (regarding Proposed Fiscal Year 2018 President's Budget).

Page 2 -   COMPLAINT
BM2/jt3

management program, as required by the Coast Zone Management Act. Defendants' actions are thus *ultra vires*, contrary to law, arbitrary, and capricious. For those reasons, this court should declare the rescue helicopter's relocation unlawful and enjoin its relocation until Defendants have satisfied the requirements of 14 U.S.C. § 912 and made the consistency determination required by the Coast Zone Management Act.

## II.     JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201(a), and pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

7. Venue is proper in the Eugene Division of the District of Oregon pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1), and LR 3-2(a)(3). Defendants are agencies of the United States and officers sued in their respective official capacities. The State of Oregon is a resident of this district, and a substantial part of the events or omissions giving rise to this complaint occurred and continue to occur within the Eugene Division of this district.

## III.     PARTIES

### A.     Plaintiff

8. The State of Oregon is a sovereign state of the United States of America. Oregon is represented by Attorney General Dan Rayfield. The Attorney General is the chief legal officer of Oregon and is authorized to institute this action.

### B.     Defendants

9. Kristi Noem is the Secretary of Homeland Security and the head of the U.S. Department of Homeland Security. She is sued in her official capacity.

10. The U.S. Department of Homeland Security (DHS) is a department of the Executive Branch of the United States government. DHS is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

11. Admiral Kevin Lunday is the acting Commandant and head of the U.S. Coast Guard. He is sued in his official capacity.

Page 3 -    COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

12. The U.S. Coast Guard is a maritime law enforcement agency. During peacetime, U.S. Coast Guard is an agency of DHS. 14 U.S.C. § 103(a), (b). U.S. Coast Guard is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

## IV.     BACKGROUND

A.  **14 U.S.C. § 912 Limits Circumstances when Defendants can close, cease operations, or significantly reduce use of Coast Guard Air Facilities**

13. The DHS Secretary may not close nor terminate operations at a Coast Guard air facility until they have satisfied the four steps contemplated by 14 U.S.C. § 912.

14. First, before proposing a closure or termination of operations, the Secretary must determine that: (1) remaining search and rescue capabilities maintain the safety of the maritime public in the area of the air facility; (2) regional or local prevailing weather and marine conditions, including water temperatures or unusual tide and current conditions, do not require continued operation of the air facility; and (3) Coast Guard search and rescue standards related to search and response times are met. 14 U.S.C. § 912(a).

15. Second, before closing the Coast Guard air facility, the Secretary must provide opportunities for public comment, including the convening of public meetings in the affected communities regarding the proposed closure or cessation of operations at the air facility. 14 U.S.C. § 912(a)(3). Before convening such public meetings, the Secretary must notify each congressional office representing any portion of the area of responsibility of the air station that is the subject of the public meeting of the time and location of that meeting. *Id.*

16. Third, before the closure, cessation of operations, or any significant reduction in personnel and use of a Coast Guard air facility, the Secretary must submit to Congress a proposal for such closure, cessation, or reduction in operations and provide written notice of such proposal to certain Congressional representatives and legislative committees. 14 U.S.C. § 912(a)(4).

17. And fourth, the Secretary may not close, cease operations, or significantly reduce personnel and use of a Coast Guard air facility until a period of 18 months beginning on the date

Page 4 -   COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

on which the proposal for such closure, cessation, or reduction in operations has been submitted to Congress for its review. 14 U.S.C. § 912(a)(5).

**B.     Defendants have closed, ceased operations, or significantly reduced the use of AIRFAC Newport.**

18.     Defendant Coast Guard has operated a rescue helicopter out of the Coast Guard Air Facility located in Newport, Oregon (AIRFAC Newport) since 1987, "following the tragic sinking of a fishing vessel that left three dead."[2]

19.     Congress approved the outpost "amid concerns that a Coast Guard base in North Bend, roughly 100 miles south, was too far away to promptly respond to emergencies in an area with a large commercial fishing fleet."[3]

20.     Since then, the fishermen of Newport have relied on the rescue helicopter, "to help get them safely through the season." Crucially, "Strong currents and dangerously cold water temperatures mean that rescuers have only minutes to reach people who have been thrown overboard or whose ship has capsized before hypothermia sets in."[4]

21.     According to reports from the Surfrider Foundation, between 2007 and 2013, 159 lives were saved by the U.S. Coast Guard in the waters off Newport. H.J.M. 20.

22.     Still, in 2013, the Coast Guard announced that it "would shutter the facility and operate instead out of Astoria and North Bend." Newport Fishermen's Wives, a local nonprofit, sued to prevent the facility's closure. *Newport Fishermen's Wives, Inc. v. U.S. Coast Guard*,

---

[2] Conrad Wilson, Michelle Wiley, and Dirk VanderHart, *Newport residents, leaders denounce possible ICE detention facility*, Oregon Public Broadcasting (OPB), (Nov 13, 2025, at 3:45pm PT) https://www.opb.org/article/2025/11/12/newport-residents-leaders-denounce-possible-ice-detention-facility/

[3] Dirk VanderHart, *Newport officials raise alarm about possible new ICE facility*, Oregon Public Radio (OPB) (Nov 10, 2025, at 7:14pm PT), https://www.opb.org/article/2025/11/10/newport-officials-raise-alarm-about-possible-new-ice-facility/

[4] Anya Petrone Slepyan and Jan Pytalski, *Coastal Community Left Reeling as USCG Helicopter Gets Relocated, DHS Moves to Build ICE Detention Facility*, The Daily Yonder (Nov 18, 2025) https://dailyyonder.com/coastal-community-left-reeling-as-uscg-helicopter-gets-relocated-dhs-moves-to-build-ice-detention-facility/2025/11/18/

Page 5 -   COMPLAINT
        BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

2015 WL 1951751 (D. Or. Apr. 29, 2015). Ultimately, Congress "stepped in and passed legislation that kept the Newport facility open."[5] That legislation was the predecessor statute of 14 U.S.C. § 912. Pub. L. No. 113–281, § 225(b); Pub. L. 114-120, § 208(a).

23. Since then, "there have been many rescues made and lives saved because that helicopter was ready to respond when needed."[6]

24. At some time before November 2025, Defendant Coast Guard moved the AIRFAC Newport rescue helicopter from Newport to North Bend.[7] North Bend is roughly 100 miles south of Newport, a distance that adds "30 to 60 minutes of response delay."[8]

25. Relocation of the rescue helicopter constitutes closure, cessation of operations, or significant reduction in the use of AIRFAC Newport.

26. Before moving the rescue helicopter, Secretary Noem did not provide opportunities for public comment, nor convene public meetings in Newport regarding a proposed closure or cessation of operations at AIRFAC Newport.

27. Before moving the rescue helicopter, Secretary Noem did not notify Congresswoman Val Hoyle, who represents Newport in the U.S. House of Representatives, nor Ron Wyden nor Jeff Merkley, Oregon's U.S. Senators, regarding any opportunity for a public meeting to discuss closure or cessation of operations at AIRFAC Newport.

28. Before moving the rescue helicopter, Secretary Noem did not submit a proposal for closure, cessation, or reduction in operations of AIRFAC Newport to any congressional committee or member of congress.

---

[5] Wilson, *supra* note 1.

[6] Del Norte Triplicate, *Coast Guard Air Facility in Newport still saving lives* (Aug 4, 2025) https://www.triplicate.com/salute_to_the_united_states_coast_guard/coast-guard-air-facility-in-newport-still-saving-lives/article_f32725ec-ed19-5a02-9302-20d77f61b354.html

[7] VanderHart, *supra* note 2.

[8] Decl. of Dr. Leann Cyr, PhD ("Cyr Decl.") ¶ 7 (Case No. 6:25-cv-02165, ECF 10).

Page 6 -   COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

29. Before moving the rescue helicopter, Secretary Noem did not provide any written notice to any Oregon congressional representative of the helicopter's impending removal.

**C.   Defendants' relocation of the rescue helicopter violates the Coastal Zone Management Act (CZMA)**

30. Relocation of the rescue helicopter away from AIRFAC Newport will have a reasonably foreseeable effect on coastal uses, including navigation, fishing, and recreation, resulting from the loss of this local search and rescue resource.

31. The Coast Zone Management Act (CZMA) of 1972 provides that federal agency actions that affect any use or resource of the state's coastal zone, must be consistent to the maximum extent practicable with the federally approved enforceable polices of a state's coastal management program. 16 U.S.C. § 1456(c).

32. A "federal agency activity" is "any function performed by or on behalf of a Federal agency in the exercise of is statutory responsibilities." 15 CFR § 930.31.

33. The U.S. Secretary of Commerce approved the Oregon Coastal Management Program on July 7, 1977. Or. Rev. Stat. § 196.425(1).

34. A federal agency carrying out an activity in a coastal zone is required to provide the state a consistency determination no later than 90 days before the final approval of the activity. 16 U.S.C. § 1456(c)(1)(C); 15 CFR § 930.36(b).

35. That determination includes whether an action has reasonably foreseeable direct and indirect effects on any coastal use or resource. 15 CFR § 930.33. An "effect on any coastal use or resource" means "any reasonably foreseeable effect on any coastal use" resulting from a federal action and include direct and indirect effects which result from the activity and later in time. 15 CFR § 930.11(g). Coastal uses include recreation and fishing. 15 CFR § 930.11(b).

36. Federal agencies are required to consider the enforceable polices of a management program "as requirements to be adhered to in addition to existing Federal agency statutory mandates." 15 CFR § 930.32(2).

Page 7 -   COMPLAINT
           BM2/jt3
                                                    Department of Justice
                                                    100 SW Market Street
                                                    Portland, OR 97201
                                                    9716731880 / Fax: 9716735000

37.     Oregon's Statewide Planning Goal 19, "Ocean Resources" is an enforceable policy of the Oregon Coastal Management Program. Goal 19 provides in part "State and federal agencies shall carry out actions that are reasonably likely to affect ocean resources and uses of the Oregon territorial sea in such a manner as to * * * protect and encourage the beneficial uses of ocean resources – such as navigation, food production, [and] recreation." Goal 19, Implementation Requirement 1.

**D.     Defendants' relocation of the rescue helicopter has harmed the State.**

38.     The Oregon Department of Fish and Wildlife ("ODFW") Marine Resources Program is located at the Oregon State University ("OSU") Hatfield Marine Science Center in Newport.

39.     ODFW staff from the Marine Resources Program routinely conduct field research at sea, in the estuary and along Newport's open rocky coast. This field research is essential to advancing the work and mission of ODFW's Marine Resources Program to sustain ocean and estuary resources, build understanding about fish and wildlife and their habitats, and benefit Oregon's species, ecosystems, and people.

40.     In the course of their field research, ODFW researchers are frequently aboard small vessels in the estuary and large vessels—commercial fishing boats or vessels chartered by ODFW—in the ocean. ODFW research teams are aboard vessels for single-day trips or prolonged trips up to seven days, commonly with 200 cumulative annual trips on ocean or estuary waters.

41.     ODFW employees also conduct research along Newport's rocky coastline and cliffs and ride along on recreational vessels at sea.

42.     The primary responsibility of the Oregon State Police's (OSP) Fish and Wildlife Division is to protect natural resources by enforcing fish, wildlife and commercial fishing laws. The Fish and Wildlife Division has a Marine Fisheries Team, comprised of seven trooper positions and one sergeant stationed along the coast of Oregon.

Page 8 -    COMPLAINT
         BM2/jt3
                         Department of Justice
                         100 SW Market Street
                         Portland, OR 97201
                         9716731880 / Fax: 9716735000

43. OSP's largest vessel, the Guardian, is harbored in Newport. It is the OSP's only long-range ocean-going patrol vessel properly equipped to pull and inspect commercial fishing gear. The Guardian is used to ensure compliance with and enforce commercial and sport fishing regulations in the Pacific Ocean and coastal inland waters. The Marine Fisheries team and other troopers also use smaller vessels to patrol and to contact other watercraft in the Pacific Ocean.

44. The rescue helicopter at AIRFAC Newport is an integral part of the State's safety planning and protocols for its employees. ODFW and OSP rely on the helicopter to be available for their employees that work at sea, in the estuary and along the coast.

45. Every minute matters when there is an emergency in the ocean or along the coast. The State is harmed by the delayed response time caused by relocating the Newport helicopter to North Bend.

46. The helicopter in Newport also advances ODFW's research. ODFW partners with researchers at Oregon State University ("OSU") to conduct research on whale population distribution and its overlap with fisheries that can lead to whale entanglement. ODFW and OSU researchers fly on the Newport helicopter to collect data for this research. The relocation of the rescue helicopter to North Bend makes this research more difficult to conduct.

47. The State is also harmed by DHS's procedural irregularity in the relocation. If the State had an opportunity to provide public comment on a proposed relocation 14 U.S.C. § 912, it would have done so.

## CAUSES OF ACTION

### COUNT 1

**Violation of the Administrative Procedures Act (APA)—
Action that is Contrary to Law (14 U.S.C. § 912)**

48. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

49. Under the Administrative Procedure Act (APA), a Court must "hold unlawful and set aside agency action" that is "not in accordance with the law," "or "in excess of statutory

Page 9 -    COMPLAINT
         BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

jurisdiction, authority, or limitations, or short of statutory right," or "without observance of procedure required by law…." 5 U.S.C. § 706(2)(A), (C)–(D).

50. Defendants' decision to remove the rescue helicopter from the Newport Coast Guard air facility constitutes final agency action because it represents the "consummation" of the agency's decision-making process and represents action "from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (citation and quotation marks omitted).

51. For the reasons discussed above, Defendants' action is not in accordance with the law and is without observance of the procedures required by law by removing the rescue helicopter from the Newport Coast Guard air facility, which represents closure, cessation of operations, or significant reduction in the use of AIRFAC Newport without satisfying the requirements of 14 U.S.C. § 912.

## COUNT 2

### Violation of the Administrative Procedure Act (APA)— Action that is Arbitrary and Capricious

52. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

53. In addition to being contrary to law, Defendants' closure, cessation of operations, or significant reduction in the use of AIRFAC Newport is arbitrary and capricious because Defendants have not offered "a satisfactory explanation for [their] action, including a rational connection between the facts found and the choice made." *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (internal quotation marks and brackets omitted). Indeed, Defendants have offered *no* explanation.

## COUNT 3

### *Ultra Vires* Action— Violation of 14 U.S.C. § 912

54. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

Page 10 - COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

55. 14 U.S.C. § 912 prohibits Defendants from closing, ceasing operations, or significantly reducing in the use of AIRFAC Newport without satisfying the four procedural steps discussed above.

56. By failing to satisfy those procedural requirements before relocating the AIRFAC Newport rescue helicopter, Defendant have closed, ceased operations, or significantly reduced the use of AIRFAC Newport, and are therefore acting *ultra vires*.

57. For those reasons, Plaintiff is entitled to a declaration that relocation of the rescue helicopter is invalid and an injunction requiring Defendants to return the rescue helicopter to AIRFAC Newport. Absent such relief, Plaintiff will continue to be harmed by Defendants' unlawful actions.

## COUNT 4

**Violation of the Administrative Procedures Act (APA)—
Action that is Contrary to Law: CZMA Review, 16 U.S.C. § 1456**

58. Plaintiffs reallege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

59. Defendants have failed to provide a consistency determination that relocation of the AIRFAC Newport rescue helicopter is consistent to the maximum extent practicable with federally approved enforceable policies of Oregon's coastal management program.

60. And, in any case, Defendants' relocation of the rescue helicopter is not consistent to the maximum extent practicable with the federally approved enforceable polices of a state's coastal management program.  16 U.S.C. § 1456(c).

61. Accordingly, Defendants' actions are contrary to law, in violation of the APA.

Page 11 - COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

a. Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its use is *ultra vires*.

b. Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its use is contrary to law.

c. Declare that any order closing the Newport Coast Guard air facility, ceasing its operations, or significantly reducing its use is arbitrary and capricious.

d. Declare that Defendants' failure to provide a consistency determination is contrary to law.

e. Hold unlawful and enjoin Defendants' relocation of the rescue helicopter from AIRFAC Newport.

f. To temporarily restrain, preliminarily enjoin, and stay Defendants' relocation of the rescue helicopter from AIRFAC Newport, thereby requiring its return to AIRFAC Newport under the same operational status as prior to the relocation, for the pendency of this litigation.

DATED November 24, 2025.

Respectfully submitted,

DAN RAYFIELD
Attorney General

   *s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL #196129
NINA ENGLANDER #106119
Senior Assistants Attorneys General
DEREK OLSON #225504
Assistants Attorney General
Trial Attorneys
Tel 971-673-1880
Fax 971-673-5000
Brian.S.Marshall@doj.oregon.gov
Nina.Englander@doj.oregon.gov
Derek.Olson@doj.oregon.gov

Of Attorneys for Plaintiff, State of Oregon

Page 12 -  COMPLAINT
BM2/jt3

Department of Justice
100 SW Market Street
Portland, OR 97201
9716731880 / Fax: 9716735000