**Eric J. Brickenstein**, OSB No. 142852
Email: eric@northcurrentlegal.com
**Mark J. Kimbrell**, OSB No. 143607
Email: mark@northcurrentlegal.com
**NORTH CURRENT LEGAL LLC**
1050 SW 6th Avenue, Suite 1414
Portland, Oregon 97204
Phone: (503) 489-9020

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Eugene Division)

| | |
|---|---|
| **NEWPORT FISHERMEN'S WIVES, INC.,** an Oregon nonprofit corporation and **LINCOLN COUNTY,** a political subdivision of the State of Oregon,<br><br>        Plaintiffs,<br>   v.<br><br>**UNITED STATES COAST GUARD**, an agency of the United States Department of Homeland Security, and **KRISTI NOEM** in her official capacity as the Secretary of Homeland Security<br><br>        Defendants. | Case No. 6:25-cv-02165-AA (Leading Case)<br><br><br>**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br><br>Consolidated with:<br>*State of Oregon v. Noem, et al.*<br>No. 6:25-cv-02172-AA (Trailing Case) |

## LR 7-1 CERTIFICATION

     Counsel for Plaintiffs Newport Fishermen's Wives, Inc. and Lincoln County certifies that the parties conferred on this motion in person with the Civil Chief of the U.S. Attorney's Office for the District of Oregon on December 3 and were unable to resolve this dispute.

*///*

**Page 1 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## **MOTION**

To preserve the status quo and prevent Defendants from endangering the lives of commercial fishermen and others working and recreating on and around the waters off the coast of Newport, Oregon, and the surrounding areas, plaintiffs move pursuant to FRCP 65(a) for a preliminary injunction as follows:

> Ordering the U.S. Coast Guard and the Department of Homeland Security acting by and through Secretary Kristi Noem to preserve the status quo ante by requiring the full time (24 hours a day, seven days a week) presence of a Dolphin MH-65 Echo rescue helicopter at the Coast Guard's AIRFAC Newport, together with full operational capabilities, infrastructure and personnel support for the duration of these consolidated cases.

Pursuant to FRCP 65(b) plaintiffs further request that the Court extend the temporary restraining order now in effect, for good cause for a period of 14 days pending resolution of this motion.

In support of this motion, plaintiffs rely on the record herein, the declarations filed herewith, the declarations filed by the State of Oregon and amicus curie City of Newport, the declarations filed in support of the predecessor case *Newport Fishermen's Wives, Inc. et al. v. United States Coast Guard*, 6:14-cv-01890-MC ("NFW I"), and the following memorandum of points and authorities.

## **MEMORANDUM**

## I.    **INTRODUCTION.**

For nearly 40 years, with very limited intermittent exceptions, the U.S. Coast Guard has maintained a full time—24 hours a day, seven days a week—rescue helicopter presence at its Newport Air Facility ("AIRFAC Newport"). The Newport helicopter is an irreplaceable frontline

**Page 2 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

safety asset for oceangoing men and women in the Newport area. So critical to life safety is the

Newport rescue helicopter, that when the Coast Guard issued notice of AIRFAC Newport's

imminent closure in 2014, Congress immediately intervened by passing a temporary moratorium.

That moratorium was followed by legislation (periodically amended and most recently signed by

President Trump during his first term in office) imposing strict finding and notice requirements

and an 18-month waiting period that must precede "any significant reduction in personnel and

use" of the facility. 14 U.S.C. § 912.

 In November 2025, reports circulated in the Newport community of evidence of AIRFAC

Newport's closure. Residents observed the helicopter's sustained absence. Residents also

observed, among other indicia of terminated operations, the conspicuous removal of signage at

Newport Municipal Airport demarcating the Coast Guard facility. Contrary to longstanding

precedent, the Newport community's pleas for information regarding these changes were met

with silence.

 On November 21, plaintiffs filed suit in this Court and moved for a temporary restraining

order requiring the helicopter's return and immediate restoration of the status quo ante at

AIRFAC Newport. On November 24, this Court granted plaintiffs' motion. The Coast Guard has

reported that as of November 25, the helicopter has returned to AIRFAC Newport where its full-

time presence is currently restored per the Court's order.

 After the Court's order, plaintiffs obtained significant discovery from the Coast Guard

including written interrogatory responses, responses to requests for admission, and the deposition

of Captain Kent Reinhold at the Coast Guard's Base Alameda in California. That discovery,

**Page 3 – PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION**

while preliminary, has shed critical light on the Coast Guard's actions and confirms that the Coast Guard violated 14 U.S.C § 912 (the "Act"), endangering the lives of Lincoln County residents and visitors. Specifically, the Coast Guard eliminated the Newport helicopter's full-time, Bravo-1 status at AIRFAC Newport without: (a) the required findings being made by the Secretary; (b) congressional notice; (c) public notice and comment; and (d) observing the required 18-month waiting period.[1]

In June 2025 Coast Guard Admiral Fosse executed a memorandum authorizing removal of the Newport helicopter. The Coast Guard admits that removal of the helicopter occurred per that memorandum, and that the helicopter's absence from AIRFAC Newport persisted through the entry of this Court's November 24 temporary restraining order. The Coast Guard also admits that it did not follow any of the Act's requirements in connection with these actions. Nevertheless, the Coast Guard insists that its actions are legitimate because they purportedly did not trigger the Act at all.

The Coast Guard's position is incorrect. First, it is contrary to Congress's intent as reflected in both the plain language of the Act and the congressional record. Addressing the House of Representatives and referencing the Act's direct ties to the Coast Guard's 2014 attempt to close AIRFAC Newport, representative DeFazio explained the Act's purpose and requirements as follows:

> [T]his legislation authorizes a rigorous administrative process that the Coast Guard must follow before it can close any AIRFAC. In the future, the Coast Guard must promptly

---

[1] Bravo-1 status refers to an operational posture wherein the time between the helicopter's call to respond and takeoff may not exceed one hour. In practice, and as discussed further below, the Newport helicopter consistently launches within just half that maximum response time.

notify Members of Congress representing affected areas and convene public meetings in communities within the area of responsibility of the AIRFAC to gather information on how the closure would affect residents and visitors. In its totality, this provision will ensure that any future proposal to close an AIRFAC will be vetted extensively through a transparent, public process; a process that will ensure that the Coast Guard's search and rescue capabilities are the absolute last place any one should consider cutting in the Coast Guard's budget.

There is no question that the Coast Guard's removal of the Newport helicopter, undertaken in secrecy without any public or congressional vetting whatsoever, is exactly what Congress intended to prevent.

Second, the Coast Guard's position is contrary to the record in this case including its own sworn statements. Captain Reinhold agreed during his deposition that the elimination of the Newport helicopter's regular presence between June 2025 and this Court's restraining order was unprecedented. This change marked the most significant reduction in operational capabilities in AIRFAC Newport's 38-year history. This is exactly the type of "significant reduction in personnel and use" of an air facility that the Act governs.

The limited data contained in the Coast Guard's interrogatory responses confirms the dramatic effect of the helicopter's removal on local Coast Guard operations and community safety. Historically, AIRFAC Newport has launched roughly the same volume of search and rescue ("SAR") operations as Air Station North Bend ("AIRSTA North Bend"), with both locations averaging roughly 40 to 50 SARs per year. In 2025, however, total SARs launched from AIRFAC Newport dropped to just <u>four</u>. Contrary to the Coast Guard's claim that AIRFAC Newport is redundant with AIRSTA North Bend's capabilities, the same period saw no material increase in SARs launched from AIRSTA North Bend above historical averages. In other words,

**Page 5 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

the removal of the Newport helicopter in 2025 corresponded to a very significant decline in total helicopter SAR launches along the central Oregon coast below historical baselines.

There can be no serious dispute that removing the Newport helicopter—done in admitted disregard of the Act—endangered the public. But for this Court's intervention, that danger would have increased dramatically with the onset of winter maritime conditions and the commercial Dungeness crab season.[2]

Put simply, Defendants violated the Act. Defendants' covert removal of the Newport helicopter in violation of the Act created an imminent and grave risk of irreparable harm to human life. The Court was right to immediately enter a temporary restraining order. The Court should likewise grant the motion at bar and enter a preliminary injunction.

## II.    LEGAL STANDARDS.

### A.    Preliminary Injunction – FRCP 65.

In considering whether to grant a preliminary injunction, the Court considers: (1) the likelihood of success on the merits; (2) irreparable harm in the absence of relief; (3) the balance of equities; and (4) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). In the Ninth Circuit, a plaintiff may meet

---

[2] Captain Reinhold testified that the Coast Guard intended to return the helicopter to AIRFAC Newport around mid-December due to the Dungeness crab season, irrespective of the Court's order. Captain Reinhold could not, however, identify any documentation memorializing this alleged intent. Reinhold Dep. at 142-43. Moreover, at the time this decision was allegedly made in October, the expected Dungeness crab opener was December 1, so a mid-December return in anticipation of crab season would make little sense. Lastly, if the Coast Guard had in fact intended to return the helicopter to AIRFAC Newport for crab season, there is no plausible reason why it would not have communicated that intent to the fishing community through the previously open lines of communication that have existed for decades.

**Page 6 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

its burden by raising serious questions going to the merits and demonstrating that the balance of hardships tips sharply its favor, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (affirming the continued vitality of the "serious questions" version of the sliding scale test after the Supreme Court's decision in *Winter*).

**B.     Review of Agency Action – 5 U.S.C. § 701 to § 706.**

The Administrative Procedure Act ("APA") directs a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). It also directs this Court to hold unlawful and set aside agency action, findings, and conclusions found to be: "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] without observance of procedure required by law[.]" 5 U.S.C. §§§ 706(2)(A),(C), and (D).

Defendants' actions, as well as their failure to take the discrete actions required by the Act, constitutes "final agency action for which there is no other adequate remedy in a court" within the meaning of the APA, 5 U.S.C. § 704.  *See* 5 U.S.C. § 551(13) (defining "agency action" as including "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"); 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

///

///

**Page 7 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

III.  __KEY FACTS.__

The Court is familiar with the history and purpose of AIRFAC Newport's establishment, the 2014 litigation, and the responsive congressional action. Plaintiffs incorporate the prior record and briefing on these issues, as well as the robust factual background contained at section II of the State's Motion for Preliminary Injunction. Plaintiffs write separately to briefly address key facts and admissions obtained from Defendants in discovery that has occurred to date.

1.  The Coast Guard admits that the 2025 removal of the Newport helicopter is unprecedented in AIRFAC Newport's history.

During his deposition, Captain Reinhold acknowledged that the complete removal of the Newport helicopter's regular positioning at AIRFAC Newport authorized in Admiral Fosse's June 2025 memorandum and extended indefinitely in a subsequent October 2025 memorandum is unprecedented. Brickenstein Decl. at Ex. 2 (Reinhold Dep., P. 81, l. 2-8); *See also* Supp. Olsen Decl. at Ex. 4. Indeed, this marks the first time in 38 years that AIRFAC Newport has had no designated helicopter presence whatsoever. Brickenstein Decl. at Ex. 2 (Reinhold Dep., P. 81, l. 2-8). This marks the most dramatic reduction in AIRFAC Newport's use in the facility's history.

2.  The 2025 removal of the Newport rescue helicopter corresponded to a drastic reduction in SARs launched from AIRFAC Newport.

Unsurprisingly, the 2025 removal of the Newport helicopter corresponded with a drastic reduction in SAR operations launched from AIRFAC Newport. Indeed, the Coast Guard's interrogatory responses reflect that in 2025, only four SARs launched from AIRFAC Newport, representing an approximately 90% reduction from historical baseline. Supp. Olsen Decl., Ex. 1 at 7. This, too, shows an overwhelming reduction in use of the facility.

3.    <u>The Coast Guard's position that AIRFAC Newport's air capabilities are redundant of AIRSTA North Bend is contradicted by its own data.</u>

The Coast Guard takes the position that removal of the Newport helicopter results in no change to operational posture because the facility's historical air capabilities are redundant of AIRFAC North Bend. This is, of course, contrary to the congressional and statutory record protecting AIRFAC Newport precisely due to its operational importance. But the Coast Guard's interrogatory responses reveal that its position is also contradicted by its own data. Specifically, the reduction in SARs launched from AIRFAC Newport did not correspond to any material increase in SARs launched from North Bend. Rather, the total number of SARs launched by helicopter along Oregon's central coast was drastically reduced. *Id.*

4.    <u>The Coast Guard's insistence that helicopter response times to the Newport area from Newport and North Bend is both implausible and contradicted by Captain Reinhold's testimony.</u>

The Coast has insisted that helicopter response times to the waters off Newport are essentially equivalent from AIRFAC Newport and AIRSTA North Bend. In a nutshell, the Coast Guard argues that the helicopter's readiness posture at North Bend is Bravo-0 (requiring launch within 30 minutes) compared to Bravo-1 status at Newport (launch within 60 minutes) and that this difference offsets the added flight time from North Bend.

At his deposition, however, Captain Reinhold testified that AIRFAC Newport launches much faster than the maximum allowed under Bravo-1 posture, typically within about 30 minutes. Reinhold Dep., p. 24, l. 9-18. Captain Reinhold also acknowledged that the Coast Guard's estimated 34-minute flight time from North Bend is conditions-dependent, and that there may be times when weather does not permit helicopter transit from North Bend to Newport at

**Page 9 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

all. *Id.*, p. 84, l. 16 – p. 86. L. 21. Of course, these conditions are most likely to occur during the winter months, precisely when helicopter availability is most critical.

In short, regardless of what the Coast Guard's operational posture is on paper, the facts on the ground dictate that helicopter response in the waters off Newport is faster and more reliable when the SAR is launched from AIRFAC Newport rather than AIRSTA North Bend.

     5.    <u>The Coast Guard admits that it did not follow the Act</u>.

The Coast Guard's responses to plaintiffs' requests for admission admit that it did not follow the Act in connection with the 2025 removal of the Newport helicopter. Supp. Olsen Decl., Ex. 2 (responses to Request Nos. 6-12).

**IV.    <u>ARGUMENT</u>.[3]**

    **A.    <u>The Court Has Jurisdiction</u>.**

The Court has jurisdiction over "Cases" and "Controversies."  US Const Art III, § 2. A case or controversy requires at least one plaintiff with standing to sue. *Murthy v. Missouri*, 603 US 43, 57 (2024). To have standing, a plaintiff must suffer injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (quotation omitted). "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quotation omitted). "'[A]n

---

[3] Plaintiffs incorporate the arguments contained in the State's brief to the extent applicable to plaintiffs' claims as though fully set forth herein.

**Page 10 – PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977)).

All three plaintiffs in these consolidated cases have standing. As to Lincoln County, the declarations of Commissioner Walter Chuck and Sheriff Adam Shanks establish that the County will suffer direct injury from the Newport helicopter's illegal removal, including impairment of the County's own emergency response capabilities, that would be redressed if Defendants' illegal action is reversed and the status quo is maintained. *See generally*, Shanks Decl. (discussing local first responders' reliance on the Coast Guard's Newport helicopter assist and associated reduction in capacity in its absence).

As to plaintiff Newport Fishermen's Wives, Inc. ("NFW"), the declarations of Taunette Dixon, Rebecca Bostwick-Terry, and Kelley Retherford establish that NFW's members' business interests and the lives of their immediate family members and employees are directly and imminently threatened by defendants' illegal action, and that enjoining removal of the Newport helicopter would bring relief. Further, NFW and its members were denied the opportunity to participate in the same public process and assurance against capricious removal of the Newport helicopter that they fought hard to achieve a decade ago. And the interests that NFW seeks to protect in this case are germane to the NFW's mission of promoting maritime safety in its

community. Finally, the claim NFW asserts and the relief it requests do not require participation of the individual members of NFW in the lawsuit. The State of Oregon likewise has standing for the reasons set forth in its brief.

Because plaintiffs have standing to sue, a case or controversy exists between the parties such that this Court has jurisdiction over these consolidated actions.

**A.**     **Plaintiffs are Highly Likely to Succeed on the Merits.**

As described above, the Coast Guard makes two key admissions that confirm plaintiffs are highly likely to prevail on their Administrative Procedure Act claim.

First, the Coast Guard admits that the 2025 removal of the Newport helicopter beginning with Admiral Fosse's memorandum and continuing through entry of this Court's temporary restraining order is an unprecedented change in the helicopter's presence at AIRFAC Newport. Although Captain Reinhold quibbled at his deposition over semantics as to whether the total removal of the facility's only aircraft represented a reduction in use, the fact is obvious on its face. *See* Reinhold Dep. p. 121, l. 10-16. Moreover, the Coast Guard's interrogatory responses confirm that 2025 saw the lowest number of SARs launched from AIRFAC Newport in any year for which data was provided, marking a dramatic reduction from historical baselines. Supp. Olsen Decl., Ex. 1 at 7.

Second, the Coast Guard admits that in removing the Newport rescue helicopter it did not follow any of the Act's requirements. These admissions are stated with specificity as to each of the Act's individual requirements in the Coast Guard's responses to Plaintiffs' Requests for Admission.

**Page 12 – PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

Simply put, the Act is unambiguous and requires that enumerated procedures be followed prior to a significant reduction in use of an air facility. The Coast Guard significantly reduced its use of AIRFAC Newport, but in doing so Defendants did not follow the statutorily mandated procedure. Standing alone, these facts—confirmed by the Coast Guard in its discovery responses—are dispositive and compel success on the merits of plaintiffs' claims.

Defendants' violation of the Act requires a remedy under 5 U.S.C. § 706.[4]  Defendants' removal of the Newport helicopter without following the Act's requirements is arbitrary and capricious, and not in accordance with the law. 5 U.S.C. § 706(2)(A); *Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (an agency's decision is arbitrary and capricious if it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency"); *see also Center for Biological Diversity v. National Highway Traffic Safety Admin.*, 538 F.3d 1172,1202-03 (9th Cir. 2008) (illustrating that an an agency's decision is arbitrary and capricious if it is not supported by evidence in the record).

Moreover, because defendants failed to take any of the required steps commanded by the Act, they exceeded their statutory jurisdiction, authority, limitations, and statutory rights, and they failed to observe the procedure required by law. 5 U.S.C. §§ 706(2)(C) and (D) (commanding courts to set aside agency action that exceeds statutory jurisdiction, authority, or

---

[4] As reflected in the Coast Guard memoranda attached as Exhibit 4 to the Supplemental Declaration of Derek Olson, the Coast Guard's removal of the Newport rescue helicopter was final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

**Page 13 – PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

limitations, or is short of a statutory right, or action made without observance of procedure required by law). For these reasons too, plaintiffs are highly likely to succeed on the merits.

      **B.**      <u>**Plaintiffs will Suffer Irreparable Harm without a Preliminary Injunction**</u>.

Injury is irreparable where it cannot be "adequately remedied by money damages" (or other legal remedies) and where the injury is "permanent or at least of long duration," *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 545 (1987). Irreparable harm is likely where it is not unduly speculative or remote. *Winter*, 555 U.S. at 22.

In granting Plaintiffs' Motion for Temporary Restraining Order, the Court readily found that plaintiffs would suffer irreparable harm in the absence of an injunction due to the increased life safety threat at sea in the Newport rescue helicopter's absence. In the 10 days that have elapsed since the Court's order, that threat has only grown more severe as winter and the Dungeness crab season fast approach. Moreover, the Coast Guard's discovery responses and the Shanks Declaration further confirm the critical importance of the Newport helicopter's life-saving service in and around the Newport area and refute the Coast Guard's implausible insistence that AIFAC Newport's air SAR capabilities are somehow redundant of AIRSTA North Bend.

In short, the irreparable harm prong of plaintiffs' motion is easily met. The threat to human life at issue in this case is not hypothetical or conjectural, and it is well supported by the record. The Court should reaffirm its prior ruling that plaintiffs will suffer irreparable harm in the absence of an injunction.

///

**Page 14 – PLAINTIFFS' MOTION FOR**
**PRELIMINARY INJUNCTION**

C.     <u>**The Public Interest Decisively Favors an Injunction**</u>.

Although analyses of the balance of equities and public interest generally merge when the government is a party, the public interest "'is better seen as an element that deserves separate attention in cases where the public interest may be affected.'" *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (quoting *Sammartano v, First Judicial District Court*, 303 F.3d 959, 974 (9th Cir. 2002)); *Southeast Alaska Conservation Council v. United States Forest Service*, 413 F. Supp. 3d 973, 984 (D. Alaska 2019). Here, the public interest is at the heart of plaintiffs' case and cuts decisively in favor of granting a life-saving injunction.

It goes without saying that matters involving public safety implicate important public interests. *See, e.g., Holmes v. Helms*, 705 F.2d 343, 346 (9th Cir. 1983) (public interest is synonymous with public safety). The need for AIFAC Newport and its full operational capacity has been crystal clear for decades, is plainly supported by the record in this case, and is beyond reasonable dispute. The public interest strongly favors an injunction.

D.     <u>**The Balance of Equities Tips Sharply in Plaintiffs' Favor**</u>.

The balance of equities likewise heavily favors plaintiffs. Without an injunction, defendants will deprive the central Oregon coast community timely access to a search and rescue helicopter at the worst possible time. Defendants' illegal removal of the Newport rescue helicopter will jeopardize the lives of the brave men and women who, within less than two weeks, will head to sea to prosecute Oregon's most important and dangerous fishery. If an

injunction is not entered to maintain the status quo, their lives will be endangered by Defendants'
illegal acts.

Conversely, an injunction would simply require defendants to continue operating
AIRFAC Newport as they did before the illegal elimination of the Newport helicopter. As this
Court put it in granting a restraining order "[the Act's required] procedures were not followed
and the Court can discern no hardship to Defendants in an injunction requiring them to continue
operating [AIRFAC Newport] as they have for the better part of four decades." That reality has
not changed, and the Court should reaffirm its ruling that the balance of equities favors plaintiffs.

### E.    Bond Should be Waived.

District courts enjoy broad discretion to determine the amount of security, if any, when
granting an injunction. *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). In the
context of public interest litigation like this case, the Ninth Circuit has a "long-standing
precedent that requiring nominal bonds [or no bond] is perfectly proper. . . ." *Save Our Sonoran,
Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005). The Court appropriately waived bond in
connection with its temporary restraining order and, for the same reasons, should do so again
here.

///

///

///

///

///

**Page 16 – PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

V.     <u>**CONCLUSION**</u>.

Plaintiffs' motion should be granted.

DATED this 4th day of December, 2025.

/s/ Eric J. Brickenstein
**Eric J. Brickenstein**, OSB No. 142852
Email: eric@northcurrentlegal.com
**Mark J. Kimbrell**, OSB No. 143607
Email: mark@northcurrentlegal.com
**NORTH CURRENT LEGAL LLC**
1050 SW 6th Avenue, Suite 1414
Portland, Oregon 97204
Phone: (503) 489-9020

**Page 17 – PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**