Meriel L. Darzen, OSB # 113645
(503) 525-2725 │ meriel@crag.org
Eric Wriston, OSB # 226130
(503) 525-2725 │ eric@crag.org
CRAG LAW CENTER
3141 E. Burnside St.
Portland, Oregon 97214

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

| | |
|---|---|
| NEWPORT FISHERMEN'S WIVES INC., an Oregon non-profit Corporation; Lincoln County,<br><br>Plaintiffs,<br><br>and<br><br>OREGON SHORES CONSERVATION COALITION, an Oregon non-profit corporation and CASCADIA WILDLANDS, an Oregon non-profit corporation,<br><br>Plaintiff-Intervenors,<br><br>v.<br><br>UNITED STATES COAST GUARD, an agency of the United States Department of Homeland Security; KRISTI NOEM, in her official capacity as Secretary of Homeland Security,<br><br>Defendants. | Case No.: 6:25-cv-2165-AA (lead case)<br>6:25-cv-02172-AA (trailing case)<br><br>**PLAINTIFF-INTERVENORS-COMPLAINT** |

PLAINTIFF-INTERVENORS' COMPLAINT

STATE OF OREGON

       Plaintiff,

and

OREGON SHORES CONSERVATION COALITION, an Oregon non-profit corporation and CASCADIA WILDLANDS, an Oregon non-profit corporation,

       Plaintiff-Intervenors,

    v.

KRISTI NOEM, in her official capacity as Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES COAST GUARD, an agency of the United States Department of Homeland Security; ADMIRAL KEVIN LUNDAY, in his official capacity as Acting Commander of the United States Coast Guard; UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT; and TODD M. LYONS, in his official capacity as the Senior Official Performing the Duties of the Director of United States Immigration and Customs Enforcement,

       Defendants.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

# INTRODUCTION AND NATURE OF ACTION

1. Plaintiff-Intervenors Cascadia Wildlands and Oregon Shores Conservation Coalition (collectively "Intervenors"), challenge the Department of Homeland Security's ("DHS") decision to authorize and construct a detention and/or processing facility ("detention facility") at the Newport Municipal Airport ("airport") in Newport, Oregon without complying with applicable law. Defendants' actions are arbitrary, capricious, and contrary to law, as well as ultra vires. Plaintiff-Intervenors bring this claim pursuant to the Coastal Zone Management Act ("CZMA"), 16 U.S.C. §§ 1451–1468, the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4370h, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701.

2. This action seeks: 1) a declaration that Defendants violated the CZMA, NEPA and the APA by deciding to fund and/or construct and authorizing construction, operation and maintenance of a detention facility in Newport, Oregon without complying with the applicable requirements of the CZMA or NEPA, 2) a permanent injunction prohibiting Defendants or their agents from initiating any actions relating to construction and operation of a new federal detention facility until it has complied with the CZMA and NEPA and 3) the vacatur and remand of any final agency decisions authorizing funding, construction and operation of such facility.

3. Should Plaintiffs prevail, Plaintiffs will seek attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or any other applicable authorities.

# JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1346 and 1331 because this action involves the United States as a defendant and arises under the laws of the United States, including the CZMA, NEPA, and the APA; and applicable regulations.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

5.  A present, actual, and justiciable controversy exists between the parties. The requested relief is therefore proper under 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201–2202.

6.  The challenged agency actions are subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706. Defendants have waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Newport Municipal Airport is located within this judicial district. Defendant maintains an office/facility in this judicial district.

8.  This case is properly filed in the Eugene Division pursuant to Local Rule 3-2 because the Newport Airport and Coast Guard facility where the detention facility planned for is located in Lincoln County. The events and omissions giving rise to this claim occurred and the property that is subject to this action is situated in the Eugene Division.

## PARTIES

A. **Plaintiffs**

9.  Plaintiff CASCADIA WILDLANDS is an Oregon non-profit organization based in Eugene, Oregon. Representing over 12,000 members and supporters, Cascadia Wildlands is devoted to the conservation of the Cascadia Bioregion, which extends from northern California to southeastern Alaska. Cascadia Wildlands uses a combination of education, organizing, outreach, litigation, advocacy, and collaboration to defend wild places and promote sustainable, restoration-based forestry. Cascadia Wildlands' members live near, have visited and regularly use the airport and surrounding naturals area for a variety of professional and personal pursuits including viewing threatened and endangered species and their habitat. Funding, construction

and operation of a detention facility would irreparably harm the interests of Cascadia Wildlands and its members.

10.  Plaintiff OREGON SHORES CONSERVATION COALITION ("Oregon Shores") is an Oregon non-profit organization based in Coos Bay, Oregon. Oregon Shores' mission is to educate and empower people to protect Oregon's coastal ecosystems and communities. It pursues this mission through combination of education, community science, enforcement, and policy advocacy. Oregon Shores has over 300 members and supporters that live in the City of Newport. Oregon Shores' members live near the airport, and frequently use the trails, beaches, and other public areas in the vicinity for recreation. Oregon Shores has regularly used beaches near the airport for organizational events such as beach walks and cleanups. Funding, construction, and operation of a detention facility would irreparably harm the interests of Oregon Shores and its members.

11.  Plaintiffs have organizational interests in ensuring that the Oregon Coastal Management Program is followed and the CZMA and NEPA are complied with, that coastal resources are protected and that public participation occurs for Federal decision-making including through NEPA and the CZMA. Plaintiffs intend to participate in the administrative processes and any forthcoming decisions by DHS or other Federal agencies that affect coastal resources, habitat, communities and recreation areas.

12.  Plaintiffs and their members, supporters, and staff would sustain injury to their aesthetic, educational, recreational, spiritual, and scientific interests if the Newport detention facility is constructed. Plaintiffs and their members, supporters, and staff have concrete plans to return to the area that will be affected by the construction and operation of the facility. Unless this Court grants the requested relief, Plaintiffs and their members, supporters, and staff will be

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

adversely and irreparably harmed by the funding, construction and operation of the detention facility.

B. **Defendants**

13. Kristi Noem is the Secretary of Homeland Security and the head of the U.S. Department of Homeland Security. She is sued in her official capacity.

14. The U.S. Department of Homeland Security (DHS) is a department of the Executive Branch of the United States government. DHS is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

15. Todd Lyons is the Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement (ICE).

16. ICE is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1). ICE is under the supervision of DHS. Admiral Kevin Lunday is the acting Commandant and head of the U.S. Coast Guard. He is sued in his official capacity. The U.S. Coast Guard is a maritime law enforcement agency. During peacetime, U.S. Coast Guard is an agency of DHS. 14 U.S.C. § 103(a), (b). U.S. Coast Guard is a federal agency within the meaning of the APA, 5 U.S.C. § 551(1).

## LEGAL BACKGROUND

### Administrative Procedure Act (APA)

17. The APA confers a right of judicial review on any person adversely affected by agency action within the meaning of a relevant statute. 5 U.S.C. § 702. Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in court are subject to judicial review. 5 U.S.C. § 704.

18. Upon review under the APA, a court shall "hold unlawful and set aside agency action … found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). Furthermore, when an agency has acted without observance of the procedure required by law, that action will be set aside. 5 U.S.C. § 706(2)(D).

### Coastal Zone Management Act (CZMA)

19. Congress enacted the CZMA to "preserve, protect, develop, and where possible, to restore or enhance, the resources of the Nation's coastal zone for this and succeeding generations." 16 U.S.C. § 1452(1).

20. The CZMA aims to meet this goal by encouraging states to develop management programs to "achieve wise use of the land and water resources of the coastal zone, giving full consideration to ecological, cultural, historic, and esthetic values . . ." 16 U.S.C. § 1452(2). Management programs consist of suites of state and local policies addressing coastal zone resources. States can apply with NOAA to add or amend enforceable policies in their management plan as state and local laws and regulations change. 15 C.F.R. §§ 923.81–923.85.

21. Once a state has developed such a management program, it is entitled to review any "federal agency activity" affecting any coastal zone resource or land use for consistency with its enforceable policies.  16 U.S.C. § 1456(c). Federal agency activities impacting the coastal zone must be "consistent to the maximum extent practicable" with the state's management program. 16 U.S.C. § 1456(c)(1)(A).

22. Agency "development projects" in the coastal zone are predetermined to affect coastal zone resources and uses. 15 C.F.R. § 930.31(b). Other federal agency activities must be reviewed by the agency to determine whether they will have any impact. 15 C.F.R. § 930.33.

23. When an agency has determined that its action will affect a coastal zone resource or land use, it must provide the state with a consistency determination "at the earliest practicable time, but in no case later than 90 days before final approval of the Federal activity . . . " 16 U.S.C. § 1456 (c)(1)(C).

24. Oregon has adopted a coastal management program, referred to as the Oregon Coastal Management Program, which incorporates many state wildlife and environmental rules and local land use regulations as enforceable polices. In Oregon, in most places, the coastal zone extends from three nautical miles off the Coast to the crest of the Coast Range mountains.

### National Environmental Policy Act (NEPA)

25. Congress enacted NEPA to "declare a national policy which will encourage productive and enjoyable harmony between man and his environment; to promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man; [and] to enrich the understanding of the ecological systems and natural resources important to the Nation." 42 U.S.C. § 4321.

26. To accomplish these purposes, NEPA and its implementing regulations set forth procedures designed to (1) ensure that federal agencies take a "hard look" at the environmental consequences of their proposed actions, and (2) foster meaningful public participation.

27. NEPA requires federal agencies to prepare, consider, publicly disclose, and approve a "detailed statement" describing the environmental impacts of and alternatives to any major federal action that may "significantly affect[] the quality of the human environment." 42 U.S.C. § 4332(2)(C). This detailed statement, known as the Environmental Impact Statement, or "EIS", must describe the environmental impacts of the proposed action and alternatives to the proposed action. Id. When issuing a notice of intent to prepare an environmental impact

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

statement, federal agencies must "include a request for public comment on alternatives or impacts and on relevant information, studies, or analyses with respect to the proposed agency action." Id. § 4336a(c).

28.    If an agency is uncertain whether a proposed action may have a significant effect on the human environment, the agency may prepare an environmental assessment, or "EA." Id. § 4336(b)(2). An EA should be a concise public document that briefly describes the proposal, the environmental impacts of the proposed action, and the environmental impacts of the alternatives considered. Id.

29.    Whether in an EIS or EA, an agency must take a "hard look" at the direct, indirect, and cumulative environmental impacts of a proposed action. Direct impacts are those that are caused by the action and occur at the same time and place. Indirect impacts are also caused by the action but occur later in time or are farther removed in distance. Cumulative impacts are the impacts of the proposed action, as well as impacts from other past, present, and reasonably foreseeable future actions, both federal and non-federal. Cumulative effects result from "actions with individually minor but collectively significant effects taking place over a period of time."

30.    In determining whether a proposed action may have a "significant" environmental effect, an agency must consider its context and intensity.

31.    NEPA places upon an agency the obligation to consider every significant aspect of the environmental impact of a proposed action. To determine which aspects may require analysis, an agency should look to the considerations and values expressed in the substantive statute driving or enabling the proposed action. If a particular resource value is addressed by the substantive statute, it is relevant to the analysis and must be duly considered by the agency.

32. After analyzing a proposed action, an agency may determine that it will have no significant impact on the environment and thus does not require further analysis in an EIS. For an agency's decision to be considered reasonable, it must issue a decision record and finding of no significant impact ("DR/FONSI") which contains sufficient evidence and analysis to show the decision is reasonably supported by the facts. The agency must show a rational connection between the facts found and the decision rendered, and that it considered all important aspects of a problem in its NEPA analysis.

## FACTUAL AND ADMINISTRATIVE BACKGROUND

33. Defendants have decided to authorize, fund, construct and maintain an ICE detention facility in Newport, Oregon. That decision constitutes final agency action, which DHS and ICE and their agents are now actively implementing.

34. Upon information and belief, the ICE detention facility will be located in or around the Newport Municipal Airport, including the 4-acre parcel that currently houses the Coast Guard's AIRFAC Newport helicopter and may include use of a 10-acre parcel at the Newport Municipal Airport that is currently leased by Signal Ventures.

35. There has been no public process relating to the decision-making process for the detention facility. Intervenors learned about this facility through news articles and through conversations with local and state government officials, as well as the on-going litigation in this case.

36. During a deposition, U.S. Coast Guard Captain Kent Reinhold acknowledged internal discussions regarding preparing AIRFAC Newport to be used as an ICE facility that occurred in early November 2025.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

37. Team Housing Solutions, Inc.—a contractor that specializes in quickly standing up housing for troops and private-sector workers—sent a notice of intent to lease the 4.3 acres of land located at the Newport Municipal Airport for "federal operations" set to begin in December 2025 for a period of at least six months. The request outlines several different uses for the potential facility, including parking for unspecified equipment and vehicles and space for mobile office trailers, storage containers and generators. It proposes the creation of a 12-foot security fence around the leased area "for controlled access." Upon information and belief, this request was withdrawn after public outcry.

38. ICE has issued one or more solicitations for contractors to perform work related to the construction and utilization of the ICE detention facility. At least one of the solicitations seeks contractors to perform health services at the ICE detention facility as early as January 2026.

39. A contractor that specializes in rapidly deployable expeditionary healthcare services in remote and austere environments—including healthcare support for military exercises and operations, diplomatic missions, natural disasters, and refugee care—has posted twelve fulltime job openings in Newport, Oregon. The open positions are listed as "hazardous duty" and include openings for a clinical director, registered nurse, pharmacist, physician, and a behavioral health specialist.

40. A contractor reached out to the City of Newport's Wastewater Supervisor regarding sewer disposal needed for a temporary full-service hotel in Newport after January 1, 2026. The contractor indicated that the disposal methodology will be via vacuum truck, the daily volume of black water will be between 80 and 130 gallons, and the daily volume of grey water

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

Case 6:25-cv-02172-AA   Document 54-1   Filed 01/23/26   Page 12 of 20

will be between 9,600 and 15,600 gallons. The City of Newport is unable to accommodate or process this level of waste due to limitations in infrastructure.

41. A contractor reached out to the City of Eugene because the contractor received a request to perform a job hauling residential wastewater from a site in Newport. The contractor estimated that the volume of hauled wastewater will initially total approximately 15,000 gallons per day, increasing to approximately 30,000 gallons per day.

42. Upon information and belief, ICE notified potential contractors that noncitizens arrested in Portland, and in a 350-mile radius from Newport, could wind up at the ICE detention facility.

43. Upon information and belief, ICE informed potential contractors that it plans to hold most detainees at the ICE detention facility in Newport for fewer than 72 hours to avoid triggering heightened standards of care—which require more space and services—under the federal rules. But ICE has also acknowledged stays may exceed the 72-hour threshold, even though doing so would violate its own standards.

44. Upon information and belief, Defendants intend to begin housing migrant detainees at the Newport Municipal Airport beginning in early 2026.

45. The area surrounding the airport is an environmentally sensitive area, made up of diverse ecosystems including coastal shorelines, beaches, dunes and wetlands, mature conifer and hardwood forests, streams and creeks, and intertidal zones. The area is within the range of several ESA-listed species: western snowy plover, marbled murrelet, and northern spotted owl. Killer whales are also known to frequent the coastal waters adjacent to the area. There are many other species of fish and wildlife in the vicinity including elk, cutthroat trout, and bald eagles.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

46. Multiple creeks run through the area and discharge directly into the ocean, including Grant Creek, which bisects the airport and contains fish habitat for species such as Cutthroat Trout, and Moore Creek, which runs along the airport's southern border.

47. The area is used by many different kinds of recreationists to engage in hiking, hunting, fishing, surfing, mountain and road bicycling, birdwatching and citizen science.

48. The ecosystems, species and habitats in and around the Newport Airport and the people who use and enjoy them will be directly, indirectly and cumulative effected if the detention facility is funded, constructed, operated and maintained by Defendants.

49. The Newport area is also at high risk for tsunamis. The Oregon Department of Geology and Mineral Industries has classified much of the area surrounding the airport as being a tsunami evacuation zone, and careful plans are in place for evacuation in the event of an emergency. Defendants' operations in this area may require alteration of these plans and could put detainees and personnel at risk.

50. NEPA requires agencies to identify and evaluate the environmental effects of major federal actions, as well as feasible alternatives, before taking final agency action.

51. NEPA also requires that where a major federal action will have significant effects on the human environment, the action agency must prepare notice of intent to prepare an environmental impact statement and a request for public comment on that notice, followed by the environment impact statement itself.

## FIRST CLAIM FOR RELIEF
### (Failure to Comply with Coastal Zone Management Act)

**Count 1: Failure to Provide a Consistency Determination**

52. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

53.     The CZMA requires that a federal agency provide a state coastal management program—here, the Oregon Coastal Management Program operated by the Department of Land Conservation and Development—with a consistency determination for any federal activity impacting a coastal zone resource or use. 16 U.S.C. § 1456(c).

54.     The consistency determination must be issued "at the earliest practicable time," which must be before the agency "reaches a significant point of decision making in its review process" and no later than 90 days before "final approval" of the activity.  16 U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36(b).

55.     Construction and operation of the detention facility is a federal agency activity that will impact the coastal zone. The detention facility is within the coastal zone, and it meets the definition of a development project, automatically triggering the consistency review requirements. 15 C.F.R. § 930.33(5)(b). Additionally, construction and operation of the detention facility will have clear impacts on coastal zone resources and land and water uses.

56.     Defendants have not provided the State of Oregon with a consistency determination despite having reached a significant and final point in their decision making process and beginning to take actions towards construction of the detention facility.

57.     Defendants' failure to provide the State of Oregon with a consistency determination for the detention facility is arbitrary, capricious, and not in compliance with the CZMA. 5 U.S.C. § 706(2)(A).

**Count 2: Failure to Ensure Actions are Consistent to the Maximum Extent Practicable with the Oregon Coastal Management Program**

58.     Plaintiffs reallege and incorporate by reference the preceding paragraphs.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

59. The CZMA requires that federal agency activities impacting the coastal zone are "consistent to the maximum extent practicable" with the enforceable policies of the Oregon Coastal Management Program. 16 U.S.C. § 1456(a).

60. As established in Count 1, above, construction and operation of the detention facility is a federal agency activity that impacts the coastal zone and therefore must comply with this requirement.

61. Upon information and belief, operation and construction of the detention facility is not "consistent to the maximum extent practicable" with the enforceable policies of the Oregon Coastal Management Program, including but not limited to the City of Newport Municipal Code, Newport Comprehensive Plan, Oregon Statewide Planning Goals, and state wildlife and environmental statutes and regulations.

62. Defendants' decision to construct and operate the detention facility despite its lack of consistency with the Oregon Coastal Management Program is arbitrary, capricious, and not in compliance with the CZMA. 5 U.S.C. § 706(2)(A).

**SECOND CLAIM FOR RELIEF**
**(Failure to Comply with NEPA)**

**Count 1: Failure to Comply with NEPA**

63. Plaintiffs reallege and incorporate by reference the preceding paragraphs.

64. NEPA requires the Defendant to prepare an EIS when a proposed major federal action may significantly affect the quality of the environment. 42 U.S.C. § 4332(2)(C). In determining whether a proposed action may "significantly" impact the environment, both the context and intensity of the action must be considered.

65. If an agency prepares an environmental assessment, the assessment must contain sufficient information to determine whether to prepare an EIS or issue a FONSI. If the agency

chooses not to prepare an EIS it must adequately explain, through a convincing statement of reasons, why potential effects are insignificant.

66. If the proposed action may have a significant environmental effect, federal agencies must prepare an EIS. 42 U.S.C. § 4332.

67. If the proposed action may have a "significant" environmental effect, the agency must prepare an EIS. The significance of multiple factors in combination may result in the need to prepare an EIS.

68. Additionally, agencies must conduct site-specific analysis before approving a project.

69. The decision to fund, authorize, construct and maintain the Newport detention facility is a major federal action that would have a significant effect on the environment. The construction of such a facility implicates environmental effects that individually and cumulatively require the preparation of an EIS.

70. For example, the area surrounding the Newport airport is a biologically and ecologically unique, diverse and significant geographic area, and contains important coastal resources, as well as forests, recreational areas, trails, and streams, and important transportation infrastructure. Much of the area is also in a tsunami and flood hazard zone.

71. The adverse effects of funding, constructing and operating a detention facility that houses and transports hundreds of people in an ecologically sensitive area with many important resources and infrastructure and high risks of tsunamis and floods outweighs any benefits.

72. The construction of the detention facility is highly controversial.

73. The construction of the detention facility will have effects that are highly uncertain or involve unique or unknown risks.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

74. The detention facility is related to other actions with cumulatively significant impacts.

75. The detention facility may adversely affect ESA-listed and candidate species, such as marbled murrelet, Western snowy plover, northern spotted owl and orca.

76. The decision to construct the detention facility violates the CZMA, as described in this Complaint.

77. Defendants' decision to plan and authorize the funding, construction, operation and maintenance of the detention facility without preparing an EIS is arbitrary, capricious, and not in compliance with NEPA. 5 U.S.C. § 706(2)(A).

**Count 2: Failure to take a "hard look" at the direct, indirect, and cumulative impacts of funding, construction, operating and maintaining the detention facility.**

78. Plaintiffs reallege and incorporate all preceding paragraphs herein by reference.

79. NEPA requires federal agencies to take a hard look at the environmental consequences of proposed actions and the reasonable alternatives that would avoid or minimize such impacts or enhance the quality of the human environment. *See* 42 U.S.C. § 4332(2)(C).

80. An environmental assessment must provide sufficient information, evidence and analysis, including disclosure and consideration of the environmental effects of the proposed action and alternatives, to determine whether to prepare an EIS or a FONSI.

81. Federal agencies are required to describe the environment of the area(s) to be affected or created by the alternatives under consideration. These "baseline conditions" must be set forth before any project implementation occurs, otherwise the agency cannot determine what effect the project will have and, therefore, cannot comply with NEPA or ensure that the proposed action will comply with applicable substantive standards.

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

82. When analyzing cumulative effects, the BLM must analyze the effects on the environment resulting from the incremental impacts of the action, and its alternatives, when added to other past, present, and reasonably foreseeable future actions.

83. To take the required "hard look" the agency may not rely on incorrect or incomplete assumptions or data. The information must be accurate and of high quality.

84. BLM must take a "hard look" before project approval. This requires utilizing accurate scientific analysis and disclosing that information and analysis, and its limitations, to the public.

85. Defendant failed to take the requisite "hard look" at the direct, indirect, and cumulative impacts of funding, construction, operation and maintenance of the detention facility.

86. The Defendant failed to conduct a NEPA analysis and failed to disclose and analyze direct, indirect, and cumulative environmental effects of funding, constructing, operating and maintaining the detention facility, including but not limited to effects on listed species, migratory and resident birds, coastal and inland waters, recreation, traffic, air quality, carbon emissions and public safety.

87. Defendants' failure to conduct a NEPA analysis, and failure to take the requisite hard look at the direct, indirect, and cumulative effects of funding, construction, operation and maintenance of the detention facility is arbitrary, capricious, and not in accordance with law. 5 U.S.C. § 706(2)(A).

## THIRD CLAIM FOR RELIEF
### (Ultra Vires Action)

88. Plaintiffs reallege and incorporate all preceding paragraphs herein by reference.

89. Defendants have reached a final decision and begun to engage in a federal agency activity that affects uses and resources of the State of Oregon's coastal zone without providing a

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

CZMA consistency determination or establishing that the activity is consistent to the maximum extent practicable with the Oregon Coastal Management Program.

90. Defendants have authorized and taken major federal action that will affect the human environment without complying with NEPA.

91. Defendants' actions are ultra vires, contrary to law and in excess of statutory authority.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and issue the following narrowly tailored relief:

A. Declare that Defendants violated the CZMA by funding, authorizing, construction and operating a detention facility without complying with the CZMA's requirements, including providing the State of Oregon with a consistency determination and ensuring that their actions are consistent to the maximum extent practicable with the Oregon Coastal Management Program.

B. Declare that Defendants violated NEPA by funding, authorizing, construction and operating a detention facility without complying with NEPA's requirements, including preparing an EIS and taking a hard look at all of the effects of the action.

C. Declare that the decision to fund, authorize, construct and operate a detention facility in Newport is arbitrary, capricious, and abuse of agency discretion, and contrary to law, in violation of Section 706(2)(A) of the APA;

D. Declare that the decision is ultra vires and in excess of statutory authority;

E. Enjoin and prohibit Defendants from funding, authorizing, constructing and maintaining a detention facility in Newport, including all pre-construction activities, construction

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*

or use of the Newport Airport for migrant deportation and detention unless and until Defendants comply with the CZMA, NEPA and the APA;

  F. Vacate and set aside any authorization or final decision to fund, construct, operate and maintain a detention facility at the Newport Airport.

  G. Award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including reasonable attorneys' fees associated with this litigation pursuant to the Equal Access to Justice Act and/or other applicable statutes; and

  H. Grant Plaintiffs such additional relief as this Court deems just and proper.

DATED this 23rd day of January 2026.

      /s/Meriel L. Darzen
      Meriel L. Darzen (OSB # 113645)
      Eric Wriston (OSB #226130)
      Crag Law Center
      3141 E. Burnside St.
      Portland, OR 97214
      503-525-2725
      Email: meriel@crag.org

      *Counsel for Plaintiff-Intervenors*

PLAINTIFF-INTERVENORS' COMPLAINT

*Crag Law Center*
*3141 E Burnside St.*
*Portland, OR 97214*
*Tel. (503) 227-2725*